NEW YORK PRACTICE REPORTS. 385

Mayor, &c., of New York agt. The Board of Health.

## SUPREME COURT.

JOHN T. HOFFMAN, Mayor of the City of New York; JOHN
K. HACKETT, Recorder of the City and County of New
York; MATTHEW T. BRENNAN, Comptroller of the City of
New York; DANIEL DEVLIN, Chamberlain and Treasurer
of the City of New York; and JAMES O'BRIEN, Chairman
of the Finance Committee of the Board of Aldermen;
and GEORGE D. KELLOGG, Chairman of the Finance Com-
mittee of the Board of Councilmen of the City of New
York, constituting the Commissioners of the Sinking Fund
of the City of New York
*agt.*

JACKSON S. SCHULTZ, JAMES CRANE, WILLARD PARKER, JOHN
O. STONE and JOHN SWINBURNE, Sanitary Commissioners
of the Metropolitan Sanitary District; THOMAS C. ACTON,
JOSEPH S. BOSWORTH, JOHN G. BERGEN and BENJAMIN F.
MANIERRE, Commissioners of the Metropolitan Police,
constituting the Metropolitan Board of Health.

The *Commissioners of the Sinking Fund* of the city of New York, have a sufficient
interest in and to the revenues from the *public markets* in the city, to warrant
them in bringing an action against the *Board of Health* of said city, to restrain
them from interfering with said markets.

The *Board of Health* have no power to remove, tear down, or in any way to inter-
fere with the *stands or stalls attached to a public market* in the city of New York,
on the ground that they are an *obstruction upon the public street, or a nuisance.*

The act creating the *Board of Health* is to be construed as applicable only to such
obstructions as are *dangerous to life or health,* and if not of that character, it
does not apply.

If unlawful obstructions are placed or erected in a public street, they become a
*nuisance;* and when this is the case it does not need the power of a board of
health to remove it. Any citizen has a right, in a proper manner, to abate a
nuisance; but it must be a nuisance which the *law declares to be such,* and not
one merely declared so by any board or individual. It may well be doubted
whether the legislature can delegate to any body of men the power to declare
what is, or what is not a nuisance.

It is not by any means certain that the extension of a public market in the city of
New York, *over the sidewalk,* is such an obstruction of the public street, that
may on account of its illegality, be declared a *public nuisance.*

The rule that the party has a remedy by action in the recovery of damages against
a party for exceeding its powers, and therefore an *injunction* should not issue,
may be proper as to individuals, but is not applicable where both parties repre-
sent the public, and where the loss must fall upon the public whoever succeeds.

VOL. XXXI.                    25

*New York Special Term July,* 1866.

THIS was a motion to dissolve an injunction heretofore obtained by the plaintiffs under the following circumstances : The plaintiffs are the commissioners of the sinking fund, empowered, among other things, to receive all market rents belonging to the city ; they receive considerable sums from the stands in Washington market, and from the stalls upon the sidewalks and portions of West, Fulton and Vesey streets, surrounding it. They allege that neither said market, nor any portion of it, nor of the stalls around it are a nuisance or detrimental to health ; that the defendants threatened to tear down the stalls and stands upon the streets and sidewalks, and that if this is done it will inflict irreparable injury.

The defendants alleged, on the contrary, that said stands and stalls on the sidewalks and streets are a nuisance and detrimental to health, and an obstruction upon the public streets and sidewalks, which, in their opinion, are liable to lead to results detrimental to the public; that they took and filed among their records what they regarded as sufficient proof to authorize their declaration that the same were such, and entered them upon their records as such, and made an order that they be removed, which order was duly served upon all persons interested, and that no party had applied for a hearing. They further showed that the stands and stalls were in fact upon the public street.

CHARLES TRACY *and*
GEORGE BLISS, JR., *for the defendants.*

The injunction herein must be dissolved for the following reasons :

I. Because an injunction will not lie against the board of health, any errors it may commit are to be remedied in some other manner. (*Hyatt* agt. *Bates,* 35 *Barb.* 308, .314, 317, 318 ; *People ex rel. Savage* agt. *Board of Health* 33 *Barb.* 344 ; *N. Y. Life Ins. Co.* agt. *Supervisors,* 4 *Duer,* 192. 199 ; *Mayor of Brooklyn* agt. *Meserole,* 26 *Wend.* 132 ; *Woodruff*

agt. *Fisher*, 17 *Barb.* 224, 234, 236; *People* agt. *Denslow*, 1st *Caine's*, 177, 180; *Van Wormer* agt. *Mayor*, 15 *Wend.* 262; *Hartwell* agt. *Armstrong*, 19 *Barb.* 166; *Wiggins* agt. *Mayor*, 9 *Paige*, 16; *Walker* agt. *Devereux*, 4 *Paige* 229; *Leigh* agt. *Westervelt.* 2 *Duer*, 618, 620, 621; *Philips* agt. *Wickham*, 1 *Paige*, 590; *Bleecker* agt. *Farrar*, 8 *Allen*, 325, 327, 329; *Heywood* agt. *Buffalo*, 14 *N. Y.* 534, 539; *Chemical Bank* agt. *Mayor*, 1 *Abb.* 79; *Thompson* agt. *Commissioners*, 2 *Abb.* 250, 251.)

II. Even if the board of health is wrong in its action, it amounts at most only to a mere trespass or tort, against which an injunction will not lie. (*Albany and North R. R. Co.* agt. *Bonnell*, 24 *N. Y.* 345, 348; *Mayor* agt. *Conover*, 5 *Abb.* 171; *Benton* agt. *City*, 15 *Barb.* 392; *Van Rensselaer* agt. *Griswold*, 3 *N. Y. Leg. Obs.* 94; *Jerome* agt. *Ross*, 7 *Johns. Ch.* 331.)

III. Nor assuming that the board of health is wrong, can the injunction be sustained on any other ground, such as irreparable injury, or the like? (*Thomson* agt. *Matthews*, 2 *Edw.* 312; *Heywood* agt. *Buffalo*, 14 *N. Y.* 534; *Gilbert* agt. *Mickle*, 4 *Sand. Chan.* 357; *Mutual Ben. Life Ins. Co.* agt. *Supervisors*, 33 *Barb.* 322.)

IV. But the proceedings of the board of health were strictly regular. They conformed in every respect to the provisions of the law creating them, as far as they had gone, and certainly cannot be enjoined till they have closed the case before them. (*Laws of* 1866, *chap.* 74, § 14; *Affidavit of Jackson S. Schultz*; *cases under first point.*)

V. The act establishing the board and the amendatory act are constitutional. (*Van Wormer* agt, *Mayor*, 15 *Wend.* 262; *People ex rel. Savage* agt. *Board of Health*, 33 *Barb.* 344; *Laws of* 1850, *chap.* 324; 2 *R. S. 5th ed.* 53; *Laws of* 1850, *chap.* 275; 2 *R. S. 5th ed.* 1 to 20.)

VI. The class of cases to which this belongs, is not one in which there is any right of trial by jury. (*Authorities cited under last point; see also Laws of* 1823, *pp.* 14, 79, 80, § 39; *Laws of* 1827, *p.* 139, §§ 24 to 33; *Part* 1, *R. Stat.*

*Chap.* 14, *Titles* 1 *and* 3 ; *Reviser's note to same chapter,* " *here-tofore* " *means before* 1846 ; *Liv.* agt. *Mayor,* 8 *Wend.* 85.)

VII. Nor does the action of the board affect the property of the plaintiff in any manner that is forbidden by the constitution. (*Wynehamer* agt. *People,* 3 *Kern.* 386, 398, 401, 422, 435 ; *Mayor* agt. *Slack,* 3 *Wheeler,* C. C. 237 ; *Brick Church* agt. *Mayor,* 5 *Cow.* 538 ; *Coates* agt. *Mayor,* 7 *Cow.* 585 ; *State* agt. *Mayor,* 3 *Duer,* 148 ; *West Saving Ins. Co* agt. *City of Philadelphia,* 31 *Penn.* 175 ; *Grant* agt. *Courter,* 24 *Barb.* 232 ; *Mayor* agt. *Second Av. R. R. Co.* 32 *N. Y.* 261, 272 ; *Baker* agt. *Boston,* 12 *Pick.* 184 ; *Beecher* agt. *Farrar,* 8 *Allen,* 325 ; *People* agt. *Mayor,* 32 *Barb.* 112 ; *People* agt. *Hoym,* 20 *How.* 76.) There is no distinction. If the stalls are taken down the materials remain.

VIII. There is no force in any of the constitutional objections raised by plaintiffs' counsel.

1. As to service of notice, the legislature may prescribe, and in this case there is full provision for personal and substituted service. (*Matter of Empire City Bank,* 18 *N. Y.* 200, 216 ; *Pamphlet act, pp.* 13 *and* 15.)

2. As to form of notice, law says (*p.* 13 ), that a hearing shall be given at a time to be fixed on application. This is all that is needed, and very different from the case cited from 1 *Gray.*

3. As to presumption that acts are regular (*Hand* agt. *Ballou,* 12 *N. Y.* 541).

4. There is no greater mingling of the legislative, judicial and executive power, than is always found in every health law, in every drainage law, highway law, and every public improvement act (*See cases cited under first point*).

5. It is constitutional to give power to declare a thing or a business a nuisance (*People* agt. *Board of Health,* 33 *Barb.* 344).

6. Making first order, the board does no more than make an order to show cause ; *prima facie,* they declare his business a nuisance, as a court declares a temporary injunction may be granted, but it does not follow that the court has

prejudged the case. In each instance, if there is no appearance, a final order will be made.

7. The law is not to be declared unconstitutional, because it is assumed a party will have no right to examine witnesses, or to cross-examine opposing witnesses, or that evidence will not be on oath; on the contrary, every presumption is to be made in favor of the law.

8. It was quite constitutional for the legislature to confer the powers on the board of health which it has conferred. (15 *N. Y.* 332 ; 15 *N. Y.* 300.)

IX. Even if in some respects the law should be held to be unconstitutional, it clearly is not so as a whole, nor in its application as developed in this case.

There is no question of want of notice, of illegal entry and search, of destruction of property, or anything of the kind.

The plaintiffs had notice by what was in substance an order to show cause; it was served on them personally.

ABRAHAM R. LAWRENCE, JR., *and*
WILLIAM F. ALLEN, *for plaintiffs.*

I. The act to create a metropolitan sanitary district, &c., is in violation of the constitution of the state.

1. It invades and breaks up the local divisions of the state, as recognized by the constitution, and interferes with the arrangements to which counties and cities are subservient or instrumental, and in which their agency is contemplated. (*Const. art.* 1, § 17 ; *art.* 10, *&c.* ; 1 *R. S.* 83, *per* DENIO, *J* ; *People* agt. *Draper*, 15 *N. Y. R.* 542.)

2. It confers upon a new body, unknown to the constitution, legislative authority over a part of the state, erecting that part into a separate and distinct local organization for this special purpose. The constitution vests the legislative power in the senate and assembly, with power to confer such power upon the board of supervisors (*Const. art.* 3, §§ 1, 17.)

The board act in a legislative capacity in most of the matters over which they assume jurisdiction. (*People* agt.

*Board of Health of N. Y.* 33 *Barb.* 344; *Baker* agt. *City of Boston,* 12 *Pick.* 184; *Coates* agt. *Mayor of N, Y.* 7 *Cow.* 585.)

They are not confined in their acts to administering the laws enacted by the legislature, or executing the sanitary regulations and ordinances of the state, or local legislation, but are authorized to, and do in fact, make and prescribe the laws and regulations which they seek to enforce. The legislative power in matters affecting the city, is in the common council (*Val. Laws,* 252, 256, 269.)

3. It assumes to and does create a judicial tribunal not authorized by the constitution, and the judges of which are not elected as the constitution requires in all cases of a local judiciary. Their acts are declared to be judicial, and they have power to issue criminal process. (*Act,* § 14, *sub.* 2; *Const. art.* 6, §§ 14, 18; 15 *N. Y.* 297.)

II. The law does not, neither can an act of the legislature, confer upon this body, or any body of men, the right to destroy the property of individuals. Nuisances may be abated by the destruction of property, when it becomes necessary; and the necessity must exist and be shown in justification of the act in actions brought. The power and the right results from the great law of necessity, and cannot be, and is not conferred upon any body of men. It is a power that cannot, in the nature of things, exist under the law, and the board of health has no more authority and discretion in the premises than a private citizen. Property does not lose its character as property, nor the owner forfeit his right in it because it is offensive or noxious, or an obstruction to the free use and enjoyment of a street or common. A party cannot be deprived of his property except by due process of law. (*Const. U. S. amendments, art.* 5; *Const. of State of New York, art.* 1, § 7; *People* agt. *Corp. of Albany,* 11 *Wend. R.* 539; *Rogers* agt. *Barker,* 31 *Barb.* 447.) "Due process of law" (*Embury* agt. *Conner,* 3 *Comst.* 511).

It means a trial according to the course of the common law, and not by mere legislation. (*Taylor* agt. *Porter,* 4 *Hill,* 140; *Westervelt* agt. *Grigg,* 2 *Kern.* 212; *Wynehamer*

agt. *People*, 3 *Kern.* 378, 393, 416, 445 ; *Burch* agt. *Newbury*, 6 *Seld.* 374, 397.)

The act does not profess to give the board of health the power to destroy property. A removal of the stands or stalls is necessarily a destruction of them and of the business of the occupant.

III. The whole power of the board of health is restricted by the terms of the act, to dealing with such matters as affect the health of the community. Their powers and duties are strictly sanitary in their character. Nuisances that do not affect the public health, are without their jurisdiction.

The streets of the city may be obstructed and rendered impassable, and the individual members of the board of health must climb over or get around the obstructions as best they may, or apply to the proper authorities to remove them, or exercise the right of removing them as individuals, and subject to the same accountability as other individuals.

The amendments to section 12 of the original act, may have been intended by the projector of them, in his greed for power, to displace the city authorities in their control over the streets, but that could not have been the intent of the legislature. They are all to be interpreted with respect to the general purposes of the act and the general powers conferred.

The maxim "*nosciter a sociis*," will control the interpretation. (*Corning* agt. *McCullough*, 1 *Comst.* 47, 69 ; *St. John* agt. *A. M. Mut. F. N. Ins. Co.* 1 *Kern.* 516, 529 ; *Buckley* agt. *Buckley*, 11 *Barb.* 43, 53 ; *Ellicotville and P. R. Co.* agt. *Buffalo, &c. R. R. Co.* 20 *Barb.* 644 ; *Broom's Leg. Max.* 294, 296.)

IV. The stands and stalls proposed to be removed, are only a nuisance as obstructions to the public streets, if they are in or do obstruct the streets, which is not admitted. The proceedings and order, with some slight attempt to conceal the truth and give color to the measure as a sanitary measure, are upon the ground that the structures obstruct the free use of the street by the public.——

V. The whole subject of markets, their locations and gen-

eral regulations, except as to cleanliness, which may be within the jurisdiction of the board of health, and the care of the streets, is committed to the city authorities, who alone have the power to act in the premises. (*St. John* agt. *Mayor*, 6 *Duer*, 315; *Matter 17th Street*, 1 *Wend. R.* 262; *N. Y. & N. H. R. R. Co.* agt. *Mayor*, 1 *Hill*, 522; *Naylor* agt. *Glazier*, 5 *Duer*. 161; *Montgomery charter*; *Valentine's City Laws, p.* 228, § 17; *p.* 248, § 40; *Id. p.* 251, § 4; *Revised Ordinances of* 1857, *pp.* 280, 284, *especially* 284, § 23.)

If the board of health have any power to remove obstructions in the streets, or to locate or remove markets, or regulate them, except as to cleanliness, it is a power exclusive and permanent, and the city authorities are divested of those powers vested in them by the city charter's past legislatures, and the necessities of the case, which is not claimed, exclusive power is vested in the board of health as to all matters committed to their charge (*act*, § 12).

VI. The stands and stalls in question were built by direction of the common council and by the city authorities, and have been leased and rented by the city for the benefit of the sinking fund, and cannot be removed by order of the board of health (*People* agt. *Corp. of Albany*, 11 *Wend. R.* 539).

VII. Markets for the sale of meats, fish and vegetables, are not nuisances *per se*, and the papers all show that these stands are not nuisances from the manner in which they are kept and occupied. The facts alleged in the complaint are not denied, and the answering affidavits place the matters beyond all controversy.

VIII. The defendants should have spread upon the record that which they regarded as proof, the facts, or the evidence of facts upon which they acted, that the court might see that the board had at least colorable ground for proceeding to destroy the property. Nothing will be assumed or presumed in favor of the jurisdiction, or in support of acts for the destruction of private property without compensation. The defendants are bound to justify their order and proposed action, with the same evidence that they would be called

NEW YORK PRACTICE REPORTS. 393

Mayor, &c., of New York agt. The Board of Health.

upon to produce if the threatened acts had been consummated, and they were sued as tresspassers.

IX. The parties proceeded against are not confined to the hearing (according to the rules or directions of said board), prescribed by the 14th section; an omission to apply for a hearing before a tribunal, that has already prejudged the case, and composed of gentlemen who are judges, prosecutors and witnesses, does not confer jurisdiction or make that legal, which but for that omission would have been illegal. Before we can be deprived of our property, we are entitled to a full and fair hearing under the constitution, according to the course of the common law, and before a judicial body.

X. The commissioners of the sinking fund, as trustees, have a right to protect the fund committed to their charge; and it is no answer to say that the creditors of the city will be paid, notwithstanding the particular fund may be spoiled and robbed. Neither is it for the wrong doer to say that the fund is the fruit of a wrong against the public committed years gone by.

INGRAHAM, J. An injunction was granted in this case restraining the defendants from removing, tearing down, or in any way interfering with the stands or stalls attached to and forming a part of Washington market. The defendants move to dissolve the injunction. Several questions were discussed before me on the argument, which I propose to notice so far as I consider them applicable to the decision of the motion.

As to the rights of the plaintiffs to maintain this action, although it would, perhaps, have been better if the corporate authorities who own the fee of the market, and who, by law, were authorized to establish it, had been joined with the plaintiffs, I am of opinion that they have a sufficient interest, as commissioners of the sinking fund, to maintain this action. They are, by virtue of the statute, authorized to collect and apply to the payment of the city debt the proceeds of rents, &c., from the public markets, and, as such trustees, they have a right, and it is their duty, to protect the property

from destruction from which such rents accrue, and to see that they are properly applied to the payment of the public debt.

The ordinance of the common council places all the revenues from the public markets in their charge, and by a subsequent statute that ordinance was recognized and no alteration therein could be made without the assent of the legislature.

For these reasons, I think the plaintiffs have a sufficient interest in and title to the revenues from this market, to warrant them in bringing this action.

The question then arises, whether the defendants under the statutes giving them existence as the board of health, and the amendatory act, have any authority to order the market or any part of it to be removed?

The statute under which this board was organized, was evidently intended solely for the purpose of preserving and promoting the public health—such is plainly shown by its title, and such are all the provisions contained in the act (*Chapter* 74 *of* 1866). The 12th section expressly declares their powers to be for the greater protection and security of health and life in the metropolitan district, and the powers taken from the corporate body and conferred upon this board, are those which relate to the preservation and protection of life or health. In the amendatory act (*chapter* 686), there is nothing showing any intent to depart from the great object which led to the formation of the board of health, unless something can be found in the third section of the amended act to which I will refer hereafter. I will here add, however, that the wording of that section, which is intended as amending the 12th section of the original act, also continues the limitation " to be for the purpose of preserving or protecting life and health or preventing disease;" and the powers conferred are to be exercised for the greater protection and security of health and life in said district, &c.; and by that section the powers so conferred were to be construed to include the removal of any obstruction, matter or thing in the public streets, sidewalks or places which should be in

their opinion liable to lead to results detrimental to the pub-
lic, or dangerous to life or health, the prevention of acci-
dents by which life or health may be endangered, and gener-
ally the abating of all nuisances. There can be no doubt in
adopting the principle, that the powers conferred by these
acts were all intended as powers necessary to the preserva-
tion of the public health and of life ; and that this was the
object for which the statutes were passed. If so, then in
ascertaining what powers were conferred, we must be gov-
erned solely by the inquiry, whether they relate to the object
which the legislature had in view in passing the laws, and if
so, the authority to remove obstructions or other matters in
the public streets, sidewalks or other public places, is only
to be considered as granted with a view to carry into effect
the general purposes of the acts under consideration. It
was not pretended on the argument that this action of the
board of health, in removing any portion of the market was
necessary to the preservation of the pulic health or the pro-
tection of life ; but, as I understood the counsel, the objec-
tion to the stalls sought to be removed, was upon the sugges-
tion that such stalls were an obstruction upon a public
street, and a nuisance in the opinion of the board of health
detrimental to life. Such, too, is the allegation in the answer
in setting out the entry in its records on this subject ; but
what that entry was, is not particularly stated in the answer,
except as the general conclusion. If it was intended to rely
on the fact of the stalls being injurious or dangerous to life
or health, the records for such a conclusion should be stated,
so that it might appear that the board had before them evi-
dence upon which such a decision could be formed. There
is a report from the officers of the board stating that in their
opinion the stalls impeded ventilation.

I shall, however, consider the powers of the board as
exercised in this matter upon the ground stated, that the
stalls were either an obstruction upon the public street or a
nuisance.

I have already stated that in my judgment the act is to be
construed as applicable only to such obstructions as were

dangerous to life or health, and, if not of that chachacter, that it did not apply.

That it would be a nuisance, if it was an unlawful obstruction of a public street, must be conceded, and when that is the case, it does not need the power of a board of health to remove it. Any citizen has a right to abate a public nuisance in a street, if he does it in a proper manner, but it must be a nuisance which the law holds to be such, and not one merely declared so by any board or individual. It must be a nuisance as adjudged to be such by law. It may well be doubted whether the legislature can delegate to any body of men the power to declare what is or what is not a nuisance. Such power would be equal to a power to declare what should be a criminal act; because it is a crime to maintain a public nuisance, and if the legislature can delegate to individuals the power to define a nuisance, they can delegate to them the power to make acts . criminal which are not so by law. Such a power cannot be delegated to others by the legislature. They may authorize boards of health to pass ordinances necessary for the objects of their creation, but they cannot delegate to them the power to define what shall be a nuisance, or make acts criminal, which the law holds to be innocent.

The ground which was declared for holding these stalls to be a nuisance, was that they were obstructions in the public streets. Whether they are unlawful obstructions is not by any means free from doubt. The power to keep markets in the city was given by the Dongan charter, and afterwards in the charter of 1730, the power to the common council to establish markets was more fully granted, so as to authorize markets to be held in the public streets, which were named as they then existed, and with authority to have, hold and keep such and so many other markets at such places in the city, as shall from time to time be ordered, established, erected and appointed by the common council.

Under this authority the corporation frequently erected markets in the public streets. It is not beyond the memory of many of the inhabitants, to call to mind the markets in

Maiden Lane, near Broadway, and from Water to South streets, in Old-slip, in Wall street, and in the street near where the present Washington market is erected.

These markets were not, as far as I can ascertain, erected under any other authority than that contained in the charter of the city. I am not prepared, therefore, to say that an extension of one of these markets over the sidewalk, is such an obstruction of the public street that may, on account of its illegality, be declared a public nuisance. On the contrary, until otherwise judicially determined, I should be inclined to hold such extension of the market to be within the chartered powers of the corporation, or, at least, that before the board of health could declare it to be a nuisance for that cause, they should obtain a judicial determination that the facts exist which make it such a nuisanc. The power is given by the legislature to regulate and control the public markets, but that power is limited, viz : "So far as relates to the cleanliness, ventilation and drainage thereof, and to the prevention of the sale, or offering for sale, of improper articles therein." This limitation of their power over the markets excludes all other right to interfere with them, unless some other authority can be found for it. I do not consider it to be either an unlawful obstruction upon the street or a nuisance as such is defined to be by law, and I can see no authority by which the defendants, under the powers vested in them, can order them to be removed for these causes. I consider the powers of a board of health to be very extensive, and in some respects without control, but these powers are only in connection with the subject matter for which such board is called into existence ; but when they go beyond such authority and attempt to control and regulate the public affairs, irrespective of the preservation of the public health, they attempt the exercise of powers not vested in them, and do acts which the courts should restrain.

It was urged before me, that even if the board of health were in error, and should do an injury to the city property in which they exceeded their powers, that there was a remedy

by action in the recovery of damages, and therefore an injunction was not a proper remedy. Such a rule may be proper as to individuals, but is not, I think, applicable to a case where the parties both represent the public, and where the loss must fall upon the public, whoever succeeds.

It is not well to apply such a rule to a case where the loss in any event must be paid out of the treasury, for the purpose of allowing different public bodies, invested with powers for the government of the city, to engage in a contest between themselves, and to exert their powers against each other.

Instead of such a course, it would be much more to the interest of the public treasury, and far more consistent with a proper discharge of public duties, if these different bodies should harmoniously endeavor to promote the public welfare in accordance with the provisions of law, rather than to waste the public property by its unnecessary destruction or by costly litigation.

The motion to dissolve the injunction is denied.