THE PEOPLE ex rel. JOHN COPCUTT, Appellant, *v.* THE BOARD OF HEALTH OF THE CITY OF YONKERS, Respondent.

*It seems*, that whoever, in abating an alleged nuisance, destroys or injures private property, or interferes with private rights, whether he be a public officer or private person, save when he acts under the judgment or order of a court having jurisdiction, acts at his peril, and will be held liable, unless when his act is challenged in court it appears that the thing abated was in fact a nuisance.

*It seems*, also, this rule applies to boards of health acting under authority of the general act (Chap. 270, Laws of 1885) for the preservation of the public health.

The determination of a board of health, acting under said statute, that a nuisance exists, is not final and conclusive upon the owner of premises upon which it is alleged to exist.

The board has no jurisdiction to make an ordinance directing the abatement of an alleged nuisance unless there be in fact a nuisance, and while it seems the order may be presumptively valid until questioned or assailed, when so questioned, either by action brought by the owner of the property to restrain the destruction of property, or to recover damages against those engaged in the abatement, if he can show that the nuisance did not in fact exist he is entitled to judgment, notwithstanding the ordinance.

Such a board is not required, under said act, to give any person a hearing before exercising its jurisdiction, and it is not required to and has no power to call and swear witnesses, but may act upon its own inspection and knowledge.

The determination, therefore, of a board of health as to the existence of a nuisance is not reviewable by certiorari.

Accordingly *held*, where the board of health of the city of Yonkers, to which, by the charter of the city (§ 2, tit. 9, chap. 184, Laws of 1881), is given power to abate public nuisances and all the powers conferred upon boards of health in cities by any general law, passed an ordinance declaring certain dams within the corporate limits to be nuisances, and directing their abatement, that said ordinance was not reviewable by certiorari.

*It seems*, that if there be a doubt as to whether property condemned by a board of health as a nuisance is such in fact it should proceed by action to restrain or abate the nuisance.

By the amendment of the city charter in 1892 (Chap. 54, Laws of 1892), which divided the city into wards and gave one supervisor to each ward, the office of "the supervisor," as provided for by the original charter, was abolished, and so, that officer ceased to be a member of the board of health, and as the ward supervisors are not made members of the board, it was, after the amendment, composed of but five members, and four of them are competent to act as a board, in the absence of the fifth.

·(Argued October 23, 1893; decided November 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 28, 1893, which affirmed proceedings of the board of health of the city of Yonkers brought up for review by certiorari, and ordered a recovery in its favor against the relator.

This was a proceeding to review by certiorari the proceedings of the board of health of the city of Yonkers, by which certain dams upon the Nepperhan river were determined to be nuisances and ordered to be removed.

The Nepperhan river is a small stream of water flowing through the city of Yonkers, and across the stream there were several dams to furnish power to drive machinery. Much complaint having been made to the board of health that these dams created nuisances, the members of the board resolved to hold a meeting on the 27th day of March last to consider the condition of the dams, and they ordered notice to be given to the owners of the dams to show cause at that time why the dams should not be removed. In pursuance of this resolution notice was served upon the relator, who owned or was interested in two of the dams and the ponds and water powers

1893.] People ex rel. Cofcutt *v.* Board of Health. 3

N. Y. Rep.]                    Statement of case.

thereby created, called the 5th and 6th water powers, and he appeared before the board at the time and place in person and by counsel; and he gave evidence tending to show that the two dams were not nuisances, and did not create nuisances, and there was also evidence in conflict with the case made by him. After hearing the evidence the board made its determination that the dams were nuisances, and ordered them removed.

The relator then instituted this proceeding by certiorari to review this determination. The board made return to the writ, setting forth all its proceedings and the evidence taken by it, and stated in its return that its determination and action were based " not only upon testimony given by the witnesses, but that the determination of the said board of health, and the members thereof, has been based mainly upon the individual knowledge and experience of the members of said board of health concerning the ponds in the Nepperhan stream, and the condition thereof, inasmuch as each member of the board of health, in performance of the duties imposed by law, has personally inspected and has examined and inquired into the condition of said ponds and of said stream, and that the conclusions reached by this board have been reached and depend largely upon personal knowledge and experience of the individual members of this board, and for this reason it is apparent that this board cannot certify to and reproduce before this court all of the proofs, nor all of the grounds of the determination of said board, nor any considerable part thereof." Upon the return and the papers filed therewith the General Term affirmed the action of the board, and then the relator appealed to this court.

*Calvin Frost* for appellant. None of the matters other than what took place at the hearing, of which the relator was notified, and at which he was present, should have been returned, and they should be disregarded. (Code Civ. Pro. § 2140, subds. 4, 5; *Babcock* v. *City of Buffalo*, 56 N. Y. 268; *In re Jacobs*, 98 id. 98; *Van Wormer* v. *Mayor, etc.*, 15 Wend. 264.) It is claimed by defendant that a writ of certiorari will not lie

to a board of health. This is untenable. (Code Civ. Pro. § 2120 ; *In re Bradhurst,* 16 Johns. 8 ; *People ex rel.* v. *Bd. of Health,* 58 Hun, 595 ; *People* v. *Wood,* 62 id. 131 ; *City of Rochester* v. *Simpson,* 57 id. 36 ; *Van Wormer* v. *Mayor, etc.,* 15 Wend. 262.) The board was not legally constituted. (Laws of 1881, chap. 184, § 4 ; Laws of 1892, chap. 54, § 4.) The board erred in refusing to receive in evidence its own sanitary code prohibiting the defilement of the waters of the Nepperhan river, and in refusing proof of request to take action to prevent such defilement, on the ground that the testimony was immaterial and irrelevant; also in refusing to receive evidence that the board had not passed any ordinance prohibiting such defilement down to 1891. (*In re Jacobs,* 98 N. Y. 108.) This court is asked by the relator to review the proceedings of the board of health and its adjudication, by force of which his dams have been destroyed, to the end that, if erroneous, he may have restitution ; this he is entitled to. (Code Civ. Pro. § 2142.) The board erred in refusing to allow proof of the ordinances of the board of health affecting the interference with or defilement of the Nepperhan river from 1881 to 1891. This evidence was competent. (*Babcock* v. *City of Buffalo,* 56 N. Y. 272.)

*James M. Hunt* for respondent. No question regarding the constitution of the board of health and the membership thereof can be properly raised under a writ of certiorari. (*People ex rel.* v. *Parker,* 117 N. Y. 86–88.) In view of the statements contained in the return of the writ now before the court, the writ should have been quashed. (*People ex rel.* v. *Fire Comrs.,* 73 N. Y. 437 ; *People* v. *McCarthy,* 102 id. 630.) As the writ was not quashed, then, upon the record, the decision of the board of health should be affirmed. (Laws of 1885, chap. 270, § 3 ; 76 N. Y. 410.) The fact that the relator claims that the water power is of great value, should not have weight enough with the court to permit these nuisances to continue and public health to be jeopardized. (*In re Copcutt,* 23 N. Y. Supp. 394.)

EARL, J.  The disposition of this case turns largely upon the effect and the construction of the statutes constituting the board of health, and defining its powers and duties, and we will, therefore, first give attention to the statutes.

By chapter 184 of the Laws of 1881, an act to revise the charter of the city of Yonkers, it is provided in title 9 that the mayor, the supervisor, the president of the common council, the president of the board of water commissioners, the president of the board of police and the health officer shall constitute the board of health of the city, and the board is given power, among other things, "to suppress, abate and remove any public nuisance detrimental to the public health," and in addition to other remedies which it may possess by law, it is empowered to issue its warrant whenever necessary to the sheriff of the county of Westchester, or to any policeman of the city, authorizing and commanding him to forthwith suppress, abate and remove such public nuisance, at the expense of the lot whereon the nuisance exists, and of the owner thereof, to be enforced and collected as in the act provided. It is further provided that, in addition to the powers expressly granted in the act, the board shall "have and exercise all the powers now or at any time hereafter conferred upon boards of health in cities by any general law," and it is authorized to make ordinances, rules and regulations to carry into effect its powers, and to enforce observance of them by penalties and by action instituted in its name to recover penalties and to restrain and abate the nuisance. By chapter 270 of the Laws of 1885, the general act for the preservation of the public health, it is provided that the board of health in any city of the state, except the cities of New York, Brooklyn and Buffalo, shall have the power, and it shall be its duty, "to receive and examine into the nature of complaints made by any of the inhabitants concerning nuisances or causes of danger or injury to life and health within the limits of its jurisdiction; to enter upon or within any place or premises where nuisances or conditions dangerous to life and health are known or believed to exist, and by appointed members or persons to

**6**   People ex rel. Copcutt *v.* Board of Health. [Nov.,

Opinion of the Court, per Earl, J.          [Vol. 140.

inspect and examine the same, and all owners, agents and occupants shall permit such sanitary examinations, and said board of health shall furnish said owners, agents and occupants a written statement of results or conclusions of such examinations; and every such board of health shall have power, and it shall be its duty, to order the suppression and removal of nuisances and conditions detrimental to life and health found to exist within the limits of its jurisdiction," and "to make, without the publication thereof, such orders and regulations in special and individual cases, not of general application, as it may see fit, concerning the suppression and removal of nuisances." It is further authorized to abate nuisances, and to impose penalties for the violation of its orders and regulations, and the violation of them is also made a misdemeanor, and it may commence actions to restrain and abate nuisances, and to enforce its orders and regulations.

A careful examination of the two acts shows that there is no provision for a hearing before the board on the part of any person who is charged with maintaining a nuisance upon his premises. The right to such a hearing is not expressly given and cannot be implied from any language found in either act or from the nature of the subjects dealt with in the acts. Boards of health and other like boards act summarily, and it has not been usual anywhere to require them to give a hearing to any person before they can exercise their jurisdiction for the public welfare. The public health might suffer or be imperiled if their action could be delayed until a protracted hearing could be brought to a termination. There is no provision in the acts for calling or swearing witnesses, and there is no general law giving them power to do so. Section 843 of the Code of Civil Procedure is not applicable to such a case, for the reason that the board is not authorized by law to hear testimony or take the oral examination of witnesses.

The question may be asked, how can these provisions conferring powers upon boards of health to interfere with and destroy property, and to impose penalties and create crimes, stand with the Constitution securing to every person due pro-

cess of law before his property or personal rights or liberty can be interfered with ? The answer must be that they could not stand if we were obliged to hold that the acts referred to made the determinations of the board of health as to the existence of nuisances final and conclusive upon the owners of the premises whereon they are alleged to exist. Before such a final and conclusive determination could be made, resulting in the destruction of property, the imposition of penalties and criminal punishments, the party proceeded against must have a hearing, not as matter of favor but as matter of right, and the right to a hearing must be found in the acts. (*Stuart* v. *Palmer,* 74 N. Y. 183.)

As we have said, there is no provision of law giving any party a right to a judicial hearing before these boards, and there is no provision making their determination final. If the decisions of these boards were final and conclusive, even after a hearing, the citizen would in many cases hold his property subject to the judgments of men holding ephemeral positions in municipal bodies and boards of health, frequently uneducated and generally unfitted to discharge grave judicial functions. Boards of health under the acts referred to cannot, as to any existing state of facts, by their determination make that a nuisance which is not in fact a nuisance. They have no jurisdiction to make any order or ordinance abating an alleged nuisance unless there be in fact a nuisance. It is the actual existence of a nuisance which gives them jurisdiction to act. Their acts declaring nuisances may be presumptively valid until questioned or asssailed, for the same reasons which give presumptive legality to the acts of official persons under the maxim *omnia præsumuntur legitime facta donee probetur in contrarium.*

What operation then does the order or ordinance of the board of health have under these acts ? The nuisance actually existing and the jurisdiction having been regularly exercised, the order or ordinance has all the operation and effect provided in the act, and the persons who abate the nuisance have the protection which they would not have as private persons

abating, not a private nuisance especially injurious to them, but a public nuisance injurious to the general public.

It may be said that if the determination of a board of health as to a nuisance be not final and conclusive, then the members of the board, and all persons acting under their authority in abating the alleged nuisance, act at their peril; and so they do, and no other view of the law would give adequate protection to private rights. They should not destroy property as a nuisance unless they know it to be such, and if there be doubt whether it be a nuisance or not the board should proceed by action to restrain or abate the nuisance, and thus have the protection of a judgment for what it may do.

It may further be asked, what, under this view of the law, is the remedy of the owner of property threatened with destruction or actually destroyed as a nuisance? He may have his action in equity to restrain the destruction of his property if the case be one where a court of equity under equitable rules has jurisdiction, or he may bring a common-law action against all the persons engaged in the abatement of the nuisance to recover his damages, and thus he will have due process of law; and if he can show that the alleged nuisance does not in fact exist he will recover judgment notwithstanding the ordinance of the board of health. Thus the views we take of these acts and similar acts conferring powers upon local officers to proceed summarily upon their own view and examination furnish adequate protection to boards of health, to the public and to property owners; and while these views are not supported by all the decided cases upon the subject, they have the support of the best reasons and of ample authority. In Cooley's Constitutional Limitations (5th ed.), at page 722, in a note, the learned author, speaking of boards of health, says: "Though they cannot be vested with authority to decide finally upon one's right to property, where they proceed to interfere with it as constituting a danger to health, yet they are vested with *quasi* judicial power to decide upon what constitutes a nuisance, and all presumptions favor their actions." And again, at page 742, in

a note, citing authorities, he says : " Whether any particular thing or act is or is not permitted by the law of the state must always be a judicial question, and, therefore, the question what is and what is not a public nuisance must be judicial, and it is not competent to delegate it to local legislative or administrative boards.   The local declaration that a nuisance exists is, therefore, not conclusive, and the party concerned may contest the fact in the courts."   Dillon in his work on Municipal Corporations (4th ed.), sec. 374, says : The authority to prevent and abate nuisances and its summary exercise " may be constitutionally conferred on the incorporated place, and it authorizes its council to act against that which comes within the legal nature of a nuisance ; but such power conferred in general terms cannot be taken to authorize the extra-judicial condemnation and destruction of that as a nuisance which in its nature, situation or use is not such."   In Wood's Law of Nuisances, section 740, it is said that where the public authorities abate a nuisance under authority of a city ordinance " they are subject to the same perils and liabilities as an individual if the thing abated is not in fact a nuisance.   *   *   * It would indeed be a dangerous power to repose in municipal corporations to permit them to declare by ordinance or otherwise anything a nuisance which the caprice or interests of those having control of its government might see fit to outlaw without being responsible for all the consequences ; and even if such power is expressly given by the legislature it is utterly inoperative and void unless the thing is in fact a nuisance or was created or erected after the passage of the ordinance and in defiance of it."

In *Yates* v. *Milwaukee* (10 Wall. 497), Mr. Justice Miller said : " It is a doctrine not to be tolerated in this country that a municipal corporation without any general laws, either of the city or the state, within which a given structure can be shown to be a nuisance, can, by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself.   This would place every house, every business, and all the property of the city at the

uncontrolled will of the temporary local authorities." In *Hutton* v. *City of Camden* (39 N. J. Law Rep. 122), it was held that the action of the board of health could not determine conclusively that a nuisance exists, and that such a conclusive determination could be made only in a regular course of law before an established court of law or equity. In *Underwood* v. *Green* (42 N.Y. 140), the action was to recover the value of dead hogs removed under the direction of the city sanitary inspector, an officer clothed with judicial discretion, and acting under a city ordinance declaring that all dead animals "be forthwith removed and disposed of by removal beyond the limits of the city or otherwise, so as most effectually to secure the public health;" and it was held that it must be shown, in order to justify the act, that the dead hogs were or would become in some way dangerous or deleterious to public health. The following are also instructive authorities upon the same subject: *Mayor, etc., of New York* v. *Board of Health* (31 How. Pr. Rep. 385); *Clark* v. *Mayor, etc., of Syracuse* (13 Barb. 32); *Rogers* v. *Barker* (31 id. 447); *Coe* v. *Schultz* (47 id. 64); *Lawton* v. *Steele* (119 N. Y. 226).

The result of these authorities is that whoever abates an alleged nuisance and thus destroys or injures private property, or interferes with private rights, whether he be a public officer or private person, unless he acts under the judgment or order of a court having jurisdiction, does it at his peril, and when his act is challenged in the regular judicial tribunals it must appear that the thing abated was in fact a nuisance. This rule has the sanction of public policy and is founded upon fundamental constitutional principles.

The way is now clear to the disposition of this case. The board of health did act and had a right to act upon its own inspection and knowledge of the alleged nuisance. It was not obliged to hear any party. It could obtain its information from any source and in any way, and hence its determination upon the question of nuisance is not reviewable by certiorari. (*People ex rel.* v. *McCarthy*, 102 N. Y. 630.)

It is claimed, however, on the part of the relator that the

board of health was not properly organized when it made its determination, and that, therefore, the determination was void. Under the act of 1881, above cited, there was but one supervisor for the city of Yonkers, and " the supervisor " was made a member of the board of health.   By an amendment of the charter in 1892 (Chapter 54 of the laws of that year), the city was divided into five wards and one supervisor was required to be elected in each of the wards.   The claim of the relator is that all these supervisors became members of the board of health, and that, therefore, after the act of 1892, the board of health was composed of ten members instead of six, and that as only four members, to wit, the mayor, the president of the board of police, the health officer and the president of the common council took part in the proceedings under review, the board was not properly constituted — that, in fact, therefore, the board as such did not act, that there was no determination, and that the action taken was a nullity.   If this claim be well founded then there was no judicial determination for review by certiorari.   (*People ex rel., etc.,* v. *Parker,* 117 N. Y. 86.)

But assuming that the question as to the constitution of the board of health is before us, we think it was properly constituted.   By the act of 1892 the office of " the supervisor " disappeared and, therefore, there was no longer any such officer as " the supervisor."   The five supervisors elected in the wards were not made members of the board, and the board was thereafter composed of but five members, and the four who made the determination in the absence of the fifth were competent to act as the board.

Our conclusion, therefore, is that the judgment of the General Term should be affirmed, with costs.

All concur.

Judgment affirmed.