## HUNTER GLOVER CO. v. HARVEY STEEL PRODUCTS CORPORATION.

(District Court, W. D. Tennessee, E. D. November 12, 1924.)

No. 16.

**1. Taxation ⬅411—Assessment roll must show valuation, assessment, and tax clearly and unmistakably.**

Under the settled law of Tennessee, the tax lists or assessment rolls must show the valuation and assessment of property and the amount of the tax thereon clearly and unmistakably, and perpendicular lines dividing the sheet into columns containing figures in the absence of dollar marks and with nothing definitely showing whether the figures represent dollars or cents, or both, are not sufficient, and the assessment and all subsequent proceedings based thereon are void.

**2. Courts ⬅367—Construction of statutes by state courts binding on federal courts.**

The construction of a statute by the highest court of the state and the settled law of the state, which has become a rule of property or of action, are binding on the federal courts.

**3. Taxation ⬅428—Dollar mark on assessment roll should clearly indicate to what figures it applies.**

While a dollar mark is a well-recognized symbol, when used on an assessment roll it should be in such proximity to the figures as to clearly indicate to what figures it was intended to apply.

**4. Evidence ⬅89—Presumption of regularity of official acts may be rebutted by record.**

While the validity and regularity of the acts of public officers is presumed, where the party invoking such presumption produces the record, which contradicts the presumption, he is bound thereby.

In Equity. Suit by the Hunter Glover Company against the Harvey Steel Prod-

ucts Corporation. On exceptions by receiver to report of special master, allowing claims for taxes. Exceptions sustained.

Spragins & Hewgley and C. E. Pigford, all of Jackson, Tenn., for Hunter Glover Co.

Bond & Bond, of Jackson, Tenn., for Harvey Steel Products Corporation.

ROSS, District Judge. This matter is presented for final consideration upon numerous reports of the special master as to claims filed against the estate of defendant and upon exceptions to certain of such reports.

A receiver was heretofore appointed at the instance of plaintiff for the estate of defendant, and the business was operated for a time by such receiver until a sale of the property was had, and it is out of the assets in the hands of the receiver that it is now sought to have the claims filed allowed.

[1] Orders have heretofore been entered relative to several of the claims reported on by the master, and, in so far as his reports are now on file as to which special orders have not heretofore been entered, each of said reports is hereby confirmed and all exceptions thereto respectively overruled and disallowed, except as to the report in the matter of the taxes claimed by the state of Tennessee, Madison county, and the city of Jackson, against the estate in the hands of the receiver. As to the claim for taxes the master reported that the state, county, and city respectively were entitled to recover taxes for the years 1918, 1919, 1920, and 1921 accordingly as their claims appeared. Numerous exceptions have been filed to the holding of the special master in the matter of the taxes; however only one of such exceptions will be here especially considered, inasmuch as that exception is determinative of the matter as it is now considered. The particular exception to be disposed of is that the assessments of the property in question were void for the reason that the officials assessing such property failed to show, as required by law, the value of the property assessed or any valuation relative thereto or the amount of the taxes or any amounts as against the same.

The record discloses that defendant was the successor of the Southern Engine & Boiler Works and the Southern Engine & Boiler Manufacturing Company; that they and defendant were corporations with their principal places of business respectively at Jackson, Tenn., and that they in turn owned certain real estate and personal property in the city of Jackson, on which real estate or a portion of which there was being operated a manufacturing establishment; that under the law providing for the assessments of property for taxes, and particularly under the Act of 1907 of the Legislature of Tennessee (Laws 1907, c. 602), the officers charged with the duty of assessing property for taxes sought to so assess the property in question, and certified copies of the assessment rolls are filed as exhibits with the record. The record must be considered as presented, and by it the parties are bound. The provisions of the act of 1907 relative to the assessment of property, both real and personal, for taxation are similar in the main to the acts of the Legislature of Tennessee for many years preceding, except as to the provision in the act of 1907 that as to real estate proceedings for the assessment and collection of taxes against the same shall be considered as proceedings in rem. Whether that provision of the act of 1907 is applicable as contended in behalf of the state, county, and city on the one hand or inapplicable, as insisted by the receiver on the other hand, is a matter not here determined, for, as stated, the assessment rolls are made exhibits, and upon the evidence as submitted the rights of the parties must be decided.

Since the decision in the case of Randolph v. Metcalf, 46 Tenn. (6 Cold.) 400, 407, decided by the Supreme Court of Tennessee in 1869, it has been the settled law of this state that, where property is assessed for taxes, and the assessment rolls show facts similar to those shown by the exhibits in this case, such assessments and all subsequent proceedings based thereon are void. In that case it appeared that the taxes claimed were assessed on sheets or blanks whereon there appeared certain perpendicular lines and certain figures in the columns made thereby, but there was nothing definitely showing, nor was there anything to show, the meaning of such figures, whether they were intended to represent dollars, cents, or either or both, and it was held that it was incumbent upon the state or county seeking to collect taxes to properly assess such property in the first instance, and that a void assessment would preclude a collection of such taxes. In this case the court said at page 407:

"The evident intention of the Legislature was that the judgment and sale of land for taxes should be held good, if there was a reasonable compliance with the law. Let us test this condemnation and sale by the

provisions of the act of 1844: The name of the owner of the lot is correctly given; the number is properly set forth, but the record fails to disclose, with certainty to a common intent, the amount of the taxes, costs, etc. We see the figures 500 under the head of Value, 125 under the head of Tax, 100 under the head of Col., 150 under that of Clerk, etc. There is nothing to show for what these figures stand; whether they represent dollars or cents, or dollars only. There is no mark to designate the meaning. It is said we may read the report and judgment of condemnation, and, knowing the statute under which said judgment was rendered, would understand its proper connection, meaning, and object; but the act provides the same must be stated with certainty to a common intent. Is this so? We think not. There is nothing to show for what they stand; whether for dollars, cents, or what they indicate. * * *"

This case cited McClellan v. Cornwell, 2 Cold. (Tenn.) 300; Lawrence v. Fast, 20 Ill. 338, 71 Am. Dec. 274; Blackwell on Tax Titles, 202.

In Barnes v. Brown, 1 Tenn. Ch. page 726, at page 740, the cases of Randolph v. Metcalf, supra, and Anderson v. Post, decided by the court of chancery appeals of Tennessee and reported in 38 S. W. 283, are cited with approval.

In the Barnes Case there appears a portion of the exhibit which was a part of the assessment roll offered in the case which shows a very similar state of facts to that presented in the instant case, except that in addition to the perpendicular line spoken of in the Barnes Case and appearing on that exhibit and on the exhibits in the instant case, no dollar mark appeared on the exhibit in the Barnes Case at any place. In passing upon the validity of the assessment it is said at page 740:

"It [referring to the exhibit] has running across the page 20 spaces, subdivided by perpendicular lines into numerous smaller spaces. * * * It has been twice held in this state that the absence of the dollar mark is fatal to the assessment. Randolph v. Metcalf, 6 Cold. 400, 405, 406, 407; Anderson v. Post, 38 S. W. Rep. 283. This latter case was decided by the court of chancery appeals, and affirmed by the Supreme Court, and again referred to with approval in the case of Dunn v. Dunn, 15 Pick., at page 612. This point seems, therefore, to be well settled in this state. Will the perpendicular lines take the place of dollar marks? We know of no such general significance given to them as would authorize the court to adopt that meaning. They are convenient divisions for keeping figures in line (figures of all sorts), in long columns, to facilitate additions, and that is the use to which they are put in business. They are not, so far as we know, generally used as symbols or substitutes for dollar marks. Nor is there any testimony to the effect that there is such habitual general use of them. The fact that lines of this character have been used for a series of years in the tax offices of twenty counties of this state would not make a usage so general as to convert such perpendicular lines into symbols. The assessments must therefore be held void on this ground. * * *"

Hamilton v. Gas Light Co., 115 Tenn. 150, 90 S. W. 159, is a case more nearly parallel with the facts of the case under consideration than either of the cases above cited, as in this latter case it appears that the exhibits not only had the perpendicular lines under various headings such as "Value," "Description," etc., but the lines were regularly divided by red perpendicular lines, and in this case the court said, at page 152, 90 S. W. 159, 160:

"Examining the lists as they appear in the record, so far as they relate to this particular property, it appears that it was sold to the state of Tennessee. It further appears that there are certain figures entered on the lists between perpendicular lines, but there is nothing to show or indicate what is meant by these figures. There is no dollar mark attached to any of them, nor does the dollar mark appear anywhere upon the lists, except in the valuation of the property.

"It has been held in a number of cases that the absence of the dollar mark to indicate what is meant by the figures in the assessment of property is fatal to the assessment, and that perpendicular lines between the figures, separating them, will not suffice to make the assessment good. The question is fully treated in Barnes v. Brown, 1 Tenn. Ch. App. 740.

"The holding in that case is followed in the case of Anderson v. Post (Tenn. Ch. App.) 38 S. W. 283, which case is approved by the case of Dunn v. Dunn, 99 Tenn. 612, 42 S. W. 259, and the same doctrine is also held by this court in the case of Randolph v. Metcalf, 6 Cold. 400-407, and in a large number of unreported cases.

"We are of the opinion that defects of the character mentioned, which will render

an assessment invalid and void because it does not state specifically, plainly, and definitely the amount of taxes, will likewise render the lists of sales insufficient and void.

"Looking at the lists as we find them in the record, the figures appear to be added into a total of 1527. There is a red line between the 5 and 2, but no dollar mark appears anywhere, either in the separate items or in the total amount; and we are left to conjecture whether the amount is $1,527 or $15.27, or some other amount, or whether, indeed, it represents any amount in dollars and cents.

"We cannot assume that the perpendicular red lines are symbols or substitutes for dollar marks."

Further, on page 154, 90 S. W. 160, it is said:

"We think it important that this list of sales by the trustee, furnished to the clerk of the circuit court, should be equally as specific and definite in showing the amount of taxes in dollars and cents, as well as each item of costs and penalties in dollars and cents, as would be required to make a valid assessment, and the lists failing to show specifically and definitely the amount of each item of taxes, costs, and penalties, the lists will be insufficient and invalid to divest title out of the owner of the property, and to vest it in the state, or in the purchaser from the state."

It will be noted that the Tennessee authorities are clear, and have been for more than half a century, that the assessment lists or rolls should show definitely and clearly the amount of each item of taxes assessed against each particular piece of property and the value thereof as well as the amount of taxes due based upon such valuation, and that the matter should not be left to conjecture or inference.

Furthermore, the Supreme Court of the United States has held in Woods v. Freeman, 68 U. S. 398, 17 L. Ed. 543, that the matter cannot be left to conjecture or inference, and that the use of numerals without some mark indicating for what they stand is insufficient. This case is cited but distinguished in Ballard v. Hunter, 204 U. S. 259, 27 S. Ct. 261, 51 L. Ed. 461.

In 26 R. C. L. § 312, at pages 355, 356, it is said:

"It is held by the weight of authority that an assessment expressed in figures without indication to show that the figures represent the number of dollars of the assessment is void for uncertainty."

In support of this statement the authority cites Woods v. Freeman, supra; Lawrence v. Fast, 20 Ill. 338, 71 Am. Dec. 274; Wilson v. Glos, 266 Ill. 392, 107 N. E. 630, Ann. Cas. 1916B, 539; Eppinger v. Kirby, 23 Ill. 521, 76 Am. Dec. 709; note, Ann. Cas. 1915C, 338.

[2] It may thus be said that not only is it the settled law of Tennessee decided by its highest court that assessments such as are mentioned above are void, but that such is the statutory construction of such provisions by the highest court of Tennessee, and it is also the general rule of law. The construction of a statute by the highest court of a state is binding upon this court. Sims v. Insurance Co. (C. C. A. 6) 296 F. 115; Vassar Foundry Co. v. Whiting Corporation (C. C. A. Sixth Cir.) 2 F. (2d) 240, decided November 3, 1924. Likewise the settled law of a state which has become a rule of property or action is binding upon this court. Burgess v. Seligman, 107 U. S. at page 23, and authorities cited by this case on pages 34 and 35, 2 S. Ct. 10, 27 L. Ed. 359.

Applying the rule as shown above to the assessment lists offered as exhibits in this case, such assessments are void. In the exhibit on behalf of the state of Tennessee, which is likewise on behalf of the city, it appears that the lists contained horizontal lines on the left side thereof for the description of the property, and that there also appears a large number of perpendicular lines, some of which are red, and some blue, some of the red lines extending to the top horizontal line which runs entirely across the sheet, and some of which and the blue perpendicular lines extend to a double red line about one-half inch below the top line mentioned. These perpendicular lines divide the paper into irregular spaces. Running at right angles to the perpendicular lines entirely across the sheet are blue lines. In the space between the two lines at the top running the entire length of the paper are various headings, such as "No. Town Lot," "Value Town Lot in Corporation by Assessor," "Value Town Lot out of Corporation by Assessor." In the space here provided on the extreme left at the top appears a dollar mark, the first appearing on the paper. Another heading is, "No Acres of Land," another, "Value Acres of Land by Assessor," with a dollar mark as in the instance above mentioned; "Inc. Value of Real Estate over $200"; "Total Value of Real Estate, etc." One heading is, "Value Personal Property Fixed by Board of

Equalizers, Less $1,000," another heading, "Total Real, Personal, and Other Property." Each of these headings is separated by a perpendicular red line, and all of them have a dollar mark as above mentioned, except that of "Value Town Lots, etc." The space for the dollar mark is double the space between any other two of the perpendicular lines except that appearing on the right-hand side of the shorter red perpendicular line. The space between that and the long perpendicular red line might be said to be the equal of three of the smaller spaces, if not more. But under no heading where figures appear on the sheets is there a dollar mark any nearer to any of such figures than in the extreme left-hand corner at the top of the columns under the respective headings. There is no dollar mark sufficiently near any of the figures to enable one to say that it was meant to apply to any particular figure or set of figures, nor does any dollar mark appear anywhere on the sheets except as above stated. In the assessments for the city of Jackson and Tennessee for 1919 there simply appears under the name of "Present Owner," "Southern E. & B. Works." Under description of property "Personal Property," under heading "Value Personal Property Fixed by Board of Equalizers," there appears in the sixteenth space from the top of the figures 35000. The 3 and 5 appear together in the space under the column headed by a dollar mark. The three naughts appear each in a separate space immediately to the right of the 5. No line divides the 3 and 5, nor do any figures appear in the space appearing between the short perpendicular red line and the long one. For the year 1920 the property for the city of Jackson and Tennessee is assessed as real estate, city lots, and there appears in the column under the heading "Value Town Lots, etc.," the figures on the fourth space from the top 110000. The figures 110 appear in one space to the left, and immediately to the right of one long perpendicular red line. Three naughts follow in regular spaces to the immediate right of the first naught and all to the left of the short red perpendicular line before the next long red perpendicular line. In the next space below the figures above mentioned appear the figures 2750 in regular spaces. In the space immediately below them the figures 650 in regular spaces and two spaces below the figures 550. All these figures are to the left of the short red perpendicular line mentioned. No dollar mark

appears anywhere in this column, nor do any other figures appear on the assessment sheet except under the heading "Value Personal Property Fixed by Board of Equalizers, Less $1,000." In the seventh space below the top appear the figures 55000. The two fives appear in one space and the three naughts in spaces divided by perpendicular blue lines. At the top of the column in the space where the two fives appear there is a dollar mark. Practically the same may be said of the assessment sheet for 1921 for the city of Jackson and Tennessee, except that the figures are not exactly the same and in the space under "Value Town Lot, etc." Between the short red perpendicular line and the long red one there appear in four of the spaces two naughts to each space. No dollar mark or anything indicating dollars or cents appears anywhere under this heading, and in some of the spaces two figures appear, in some one, and some of the figures appear to be made on the line and not in any space. The same appears as to personal property as in the assessment for 1920 with the same figures given.

For the years 1918, 1919, 1920, and 1921 from Exhibits A and B which are certified as true copies of the tax book for Madison county, Tenn., appear many figures on sheets somewhat larger, but almost identical as to ruling and arrangement with those above described, except that at the head of the space under "Value Town Lots" there appears a dollar mark, but in the figures appearing in this space, beginning several spaces below where the dollar mark appears, such figures are not confined to spaces, nor do they appear regularly between lines or on lines. Many of them are almost evenly on a perpendicular line, in some spaces two figures appear in some one, but everywhere with irregularity and nothing to indicate any certain system of division by symbols or lines. If it could be said that each rectangle made by the intersections of the horizontal and perpendicular lines on the left of the short red perpendicular line between the heavy perpendicular red lines was intended to represent a dollar or dollars, as the case might be, because there appeared at the extreme left at the top of such space a dollar mark, yet in some instances it would show that more numerals than one were thus represented in one space, in some none, and in some, as stated, the line evenly divides a figure or numeral, and in some one numeral will occupy practically two spaces, and such is a

good general description of all the figures appearing upon the lists as presented, which, as stated, are certified as true copies, so that from an examination of these lists it is impossible to tell whether the figures represent dollars, cents, or either, or whether in reality they represent anything unless you resort to inference and conjecture, which the Supreme Court of the United States said could not be done. The whole matter would be left to inference as to what was intended by the figures appearing, and in some instances even conjecture or inference would be wholly insufficient to enable one to determine just what was meant by these figures.

[3] If it could be said that the figures under the column headed by the dollar mark represented dollars, one would have to conjecture as to whether that would apply to the figures to the right of such column and how far it should be so applied. It is also left to conjecture as to whether any portion of the numerals shown would represent cents. In other words, one is left wholly to inference in determining the meaning of any of the figures appearing, for no regularity exists in the use of the figures or the columns or the spaces. Furthermore, would a dollar mark merely placed at the head of a column be construed to apply to all figures appearing in that column? If so, then what would indicate whether any figures represented cents? The Supreme Court has said that a red line was insufficient, and certainly it would be. In addition to this the great majority of the figures are to the left of any red line which by any inference could be held to be intended to divide the amount of dollars from the amount intended as cents. Manifestly too much would be left to inference. While the dollar mark is a well-recognized symbol, it should be in such proximity to the figures as to clearly indicate to what figures it was intended to apply.

The owner of the property assessed was entitled to have the property so assessed as that he could determine without resort to conjecture the value placed thereon and the taxes assessed against the same. The assessing officers could have so assessed the property. They did not do so. They did not comply with the law, and under the law their assessments as presented in this case are void. The receiver had the right to present the questions here to be determined,

and in fact such was his duty. His contentions are well made, and the result is that neither the state, county, nor city is entitled to recover the taxes claimed in this case.

[4] The contention is made by counsel in behalf of the state, county, and city that the presumption is in favor of the regularity of the acts of the officers, whose duty it was to make the assessments in question. This contention is correct, and such is the presumption of law, but the parties seeking to collect the taxes in this instance offered as exhibits the assessment rolls showing what had been done. Had no proof been offered, the presumption would have been that the acts of the officers were valid and regular, and upon such presumption a decree might have been based, but, when proof is offered by either party which shows facts contrary to the presumption, as above stated, the parties are bound by such proof. The plaintiff in this case offered the proof.

It is further contended in behalf of the parties seeking to collect the taxes that when the taxes became delinquent the delinquent lists in the hands of the proper authorities had the force and effect of a judgment of a court of competent jurisdiction. If this be conceded, yet, as held by the Supreme Court of Tennessee in the cases above cited, such judgment would have to be based upon a valid assessment, and should contain within itself sufficient evidence of its regularity as to warrant proper proceedings thereunder, and in almost an identical case where it was sought to enforce the judgment it was held that the same could not be done.

It is further contended that a distinction is to be made in a proceeding where a party is seeking to enforce a title to property derived from a sale made for taxes, and where a state, county, or municipality is seeking to collect the taxes. The distinction sought to be here drawn is not warranted in this case. As shown by the Tennessee authorities above cited it has been uniformly held that defects such as appear in the assessment sheets presented in this case render not only any subsequent proceedings such as an effort to enforce a tax title void, but the assessment itself is void.

The other exceptions made to the report of the master are not determined, inasmuch as the one here considered is controlling. The report allowing the claims for taxes will be set aside and such claims disallowed.