## ARIASI v. ORIENT INS. CO. et al.

### No. 6345.

Circuit Court of Appeals, Ninth Circuit.

June 1, 1931.

Chauncey Tramutolo and George M. Naus, both of San Francisco, Cal., for appellant.

Miller & Thornton, H. B. M. Miller, and H. A. Thornton, all of San Francisco, Cal., for appellees.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

This is a second appeal to this court in the above-entitled case. We refer to our opinion on the first appeal for a statement of the facts. Orient Ins. Co. v. Ariasi (C. C. A.) 28 F.(2d) 579, 580. The first judgment rendered was in favor of the present appellant and against the appellees for the loss alleged to have been suffered by the appellant by reason of the fire which destroyed the property covered by insurance policies issued by the appellees. Numerous questions were presented by the appellees, based upon allegations that the provisions of the policy had been breached by the appellant by reason of the fact that at the time of the fire the hazard had been increased because of the revocation of a permit issued by the Prohibition Department of the federal government authorizing the appellant to manufacture and sell by permit the wine which was destroyed by the fire.

Upon appeal, the principal contention was that, by reason of the revocation of the permit, the wine was no longer property, and that by the destruction thereof appellant suffered no injury for which he could recover upon the policy. This court, however, held that, as the wine was lawfully acquired and lawfully possessed under permit in the first instance, "its mere possession after the cancellation of the permit was not unlawful, nor were all property rights therein lost," citing Street v. Lincoln Safe Deposit Co., 254 U. S. 88, 41 S. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548; Hazelwood Brewing Co. v. United States (C. C. A.) 3 F.(2d) 721. It was further held that, under section 25, tit. 2, of the National Prohibition Act (27 USCA § 39), if the wine in question was intended for use in violation of that act, or had been so used at the time of its destruction by fire, the appellant had no property rights therein and could not recover, citing Gonch v. Republic Storage Co., 245 N. Y. 272, 157 N. E. 136. It was further held that the order of the Department revoking the permit of the appellant was prima facie evidence of the facts there found, citing People ex rel. Copcutt v. Board of Health, 140 N. Y. 1, 35 N. E. 320, 23 L. R. A. 481, 37 Am. St. Rep. 522. The judgment was reversed because of the erroneous

admission of evidence, and the case remanded to the trial court for further proceedings. A new trial was had, without a jury, pursuant to written stipulation, and findings and judgment were rendered in behalf of the appellees here.

In view of the revocation of the permit, it was said in our former opinion: "The vital issue in the case, in our view, was whether, at the time of its destruction by fire, the wine was intended for use in violation of the National Prohibition Act, or had been so used. * * * "

It was stipulated at the trial that on December 26, 1924, an order was made by the Prohibition Department of the United States Government canceling the permit of the appellant to manufacture and sell wines for nonbeverage purposes, and to sell the same for sacramental and other nonbeverage purposes, pursuant to permits to purchase; that said permit was canceled on the ground that appellant had illegally disposed of wine in violation of the terms of his permit and the National Prohibition Act and that he illegally possessed the same.

Upon the trial, the appellees offered in evidence the order of the department which revoked appellant's permit. This order, issued by the federal prohibition director December 26, 1924, revoked and canceled permit No. Calif. A 62, issued to Clemente Ariasi, upon the ground therein set forth, viz.: "For the reason that it was decided at a recent hearing that you had illegally disposed of wine in violation of the terms of your permit and the National Prohibition Act and that you illegally possessed the same."

In addition to this formal order of revocation, appellees offered in evidence the findings of fact and conclusions of law and recommendations of the assistant prohibition director upon which said order of revocation was based. These findings are to the effect that federal prohibition agents went to appellant's winery and purchased wine in the kitchen of his house from the appellant himself. Search warrants were issued upon this testimony, and intoxicating liquor was discovered in the kitchen of appellant's residence, which was held in violation of the National Prohibition Act. The findings recited the fact that the appellant offered testimony to the effect that he himself was not present on the day of the alleged purchase of intoxicating liquor and therefore the government agent was mistaken. These findings further recited: "He did not deny, however, that such purchases were made except by implication that in so far as he was not there the agent could not have purchased it from him, and therefore there was no purchase. * * * Mr. Ariasi did not deny that certain intoxicating liquors which were found in the kitchen of the residence were actually found there but claimed in so far as he had a bonded winery that this liquor did not come from the bonded premises and therefore was not held in violation of his permit."

In making the recommendation, it was said: "Although there is some question about the purchase having been made from the proprietor himself, it does not appear that there was not an actual purchase made at the residence of Mr. Clemente Ariasi, the permittee in this case, and that certain other intoxicating liquors were found at a later date upon investigation by virtue of a search warrant."

It was therefore concluded that there had been a violation of the National Prohibition Act in connection with the premises owned by the appellant, and that such violation was sufficient to establish bad faith on the part of the permittee. Upon receipt of these findings, conclusions, and recommendations of the assistant prohibition director, the Prohibition Commissioner wrote to the federal prohibition director in San Francisco with reference thereto, in part as follows:

"In support of the charges contained in the citation, the presenter placed in the record evidence that on January 19, 1924, Federal Agents purchased two glasses of wine in the residence of the respondent, which residence is located about one hundred feet from the bonded winery premises. This purchase of wine was witnessed by informant, Leon J. Henrotte. A search warrant was procured upon the evidence aforementioned, and upon searching the premises a quantity of wine was found in the kitchen of the residence.

"The respondent offered evidence to the effect that he was not at his residence at the time the alleged sale was made, but that he was in San Francisco, some fifty miles distant. The respondent claimed that the liquor seized at the time his residence was raided consisted of wine he possessed before prohibition. The respondent claimed his case was dismissed in the United States District Court at Sacramento, as the search warrant was dated some two months after the date of the alleged purchase.

"The hearer recommended the revocation of the permit. This recommendation was ap-

proved by you. Your recommendation is concurred in, and you are directed to notify the winemaker that his permit has been revoked. A copy of such notification should be forwarded to this office immediately."

In rebuttal of this prima facie case, the appellant testified that the winery was 175 or 200 feet away from the kitchen at his residence; that he had some wine in his house, separate from the wine in the bonded winery; that the wine he had in the house had been kept separate from the wine in the winery ever since the prohibition law went into effect; that the wine in the house was all tax paid, and the canceled stamps were on the barrels; that when the prohibition law went into effect he had fifteen or sixteen barrels of fifty gallons each of that wine in his house, separate from the wine in the bonded winery; that he kept that wine in the house for his own personal use; that it was not wine that he had made himself, but that he had bought from other people before prohibition; that he never took any wine from the bonded winery for his own personal use and never had any of the bonded winery wine in his house. He further testified that on the day the prohibition officers claim to have bought wine in his house he was working in San Francisco (the winery was located in Santa Rosa, Cal.); that he had locked the winery before he left and had the key in his pocket; that his house was closed and nobody could get in; that he had never sold wine without a permit, and had never violated the law.

The trial court entered judgment that plaintiff take nothing by his action. It appears from the memorandum opinion of the trial court in the record that the trial court was of opinion that the prima facie case established by the revocation of appellant's permit was not overcome by appellant's evidence. While we have referred to the opinion as indicating that the trial court discredited the testimony of the appellant, this result is to be inferred also from the judgment. The appellant concedes, as he must do in view of our previous decision, that the order revoking the permit establishes prima facie that the liquor destroyed by the fire in question was illegally possessed, and hence not property within the meaning of the law and the insurance policy. But he contends that this presumption merely required him to go forward with his proof, and that, having done so, the presumption is at an end, citing Western & A. R. R. v. Henderson, 279 U. S. 639, 642, 49 S. Ct. 445, 73 L. Ed. 884;

Mobile, etc., R. Co. v. Turnipseed, 219 U. S. 35, 43, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463. The revocation of the permit upon the ground stated, in the absence of other testimony, established the fact that the liquor was illegally possessed by appellant. The question is whether or not this evidence is overcome by the affirmative evidence introduced by the opposing party. In this connection, appellees seem to admit that the prima facie case is met and overcome by adverse testimony, but point out that they do not rely wholly upon the prima facie case arising from the order of revocation itself, but that this proof has been supplemented by the findings of the assistant prohibition director, approved and adopted by the prohibition director, which disclose the facts upon which the order was based and show that an illegal sale of intoxicating liquor had been made by the appellee upon the premises involved herein. This record discloses that prohibition agents went to this "winery" and purchased wine, and that they made purchases from the permittee himself in the kitchen of his residence, about 100 feet from the bonded winery premises.

The question for our consideration then is, 'Did the testimony of the appellant, directly controverting this prima facie evidence of illegal possession, require the trial court, as a matter of law, to find the facts to be as he testified them to be? Although it is a fundamental rule of law that a trial court is not required to accept the testimony of any witness as true, but must weigh the testimony of such witness in connection with all the other evidence in the case and determine the truth, in the absence of all contradictory evidence and any inherent improbability in the testimony, the court cannot arbitrarily reject the testimony of a witness whose testimony appears credible. It is unquestionably true that, if the witnesses who appeared before the assistant prohibition director and testified as above indicated had appeared before the court on the trial of this action and had again so testified, their testimony, being in direct conflict with that of the appellant, would sustain the judgment. They did not testify. The record admitted is not primary evidence of the truth of the testimony therein set forth, nor of the facts stated in the record. It is the official action canceling the permit and declaring the possession unlawful that gives rise to the presumption that the cancellation is based upon evidence of the unlawful act of the party, as

set forth in the order or proceedings. In the absence of any other testimony, the court must accept as true the order of cancellation and the implications of unlawful possession arising therefrom. But as stated in our former opinion, the mere cancellation of the permit does not render thenceforth unlawful the possession of the wine manufactured for sale under the permit, or prove the continued possession to be unlawful and contraband. It is necessary to show an intent to use the same unlawfully. To do this, it is contended that the record before the prohibition officers showed a sale in violation of law, and consequently it is claimed, in effect, that the evidence before the prohibition officers having established one sale before the permit was canceled, in violation of the terms thereof, we should infer that the wine was held after the permit was canceled for the purposes of unlawful sale. The difficulty with this claim is that, although this conclusion was required, in the absence of any evidence to the contrary, the prima facie effect of the revocation is dissipated by positive evidence to the contrary. It does not constitute evidence to be placed in the scale, and weighed, as against the positive evidence of the plaintiff to the effect that he did not intend to violate the law and had not done so. The question as to the effect of positive evidence controverting a disputable presumption has been recently before the Supreme Court of California in the case of Smellie v. Southern Pacific Co. et al., 269 P. 657, thrice reheard, 276 P. 338, 287 P. 343, 299 P. 529. It was there held that the presumption that a person exercises due care for his own safety was substantive evidence to be weighed against the testimony introduced concerning his conduct, tending to contradict the presumption. See, also, Mar Shee v. Maryland Assurance Corp., 190 Cal. 1, 210 P. 269, and cases there cited. This conclusion, so far as it is predicated upon the statutory law of California, is not controlling in the federal courts, where the rule has been established to the contrary in Western & A. R. R. v. Henderson, 279 U. S. 639, 643, 49 S. Ct. 445, 447, 73 L. Ed. 884.

In that case our Supreme Court, reversing a judgment of the Supreme Court of Georgia, held that a Georgia statute, providing that a railroad company should be liable for any damages done to persons or property by the running of its trains, unless the company should make it appear that their agents had exercised all ordinary and reasonable care and diligence, "the presumption in all cases being against the company," raised a presumption that was unreasonable and arbitrary and violative of the due process clause of the Fourteenth Amendment. The decision in that case, in distinguishing therefrom the case of Mobile J. & K. C. R. Co. v. Turnipseed, 219 U. S. 35, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463, in which there was assailed, as arbitrary and in violation of the due process clause, a Mississippi statute which provided that proof of injury inflicted by the running of the locomotives or cars of a railroad company "shall be prima facie evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury," states the rule recognized by our Supreme Court as to the legal effect of presumptions or inferences such as were provided for by the Georgia and Mississippi statutes, respectively. After quoting the Mississippi statute and stating that the Supreme Court had, in Mobile, etc., R. Co. v. Turnipseed, supra, held it valid, the Supreme Court in Western, etc., Co. v. Henderson, supra, quoted from the earlier case the following language: "The only legal effect of this inference [created by the Mississippi statute] is to cast upon the railroad company the duty of producing some evidence to the contrary. When that is done the inference is at end, and the question of negligence is one for the jury upon all of the evidence. * * * The statute does not * * * fail in due process of law, because it creates a presumption of liability, since its operation is only to supply an inference of liability in the absence of other evidence contradicting such inference." Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U. S. 43, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463.

And in the later case the Supreme Court went on to say (279 U. S. 643, 49 S. Ct. 445, 447, 73 L. Ed. 884): "That case is essentially different from this one. * * * The Mississippi statute created merely a temporary inference of fact that vanished upon the introduction of opposing evidence. [Citing Mississippi cases.] That of Georgia as construed in this case creates an inference that is given effect of evidence to be weighed against opposing testimony, and is to prevail unless such testimony is found by the jury to preponderate."

These decisions are in accord with the general rule. Thus, in Wigmore on Evidence (2d Ed. 1923) it is stated:

"Sec. 2091. The distinction between presumptions 'of law' and presumptions 'of fact' is in truth the difference between things that are in reality presumptions (in the sense explained above) and things that are not presumptions at all. A presumption, as already noticed, is in its characteristic feature a rule of law laid down by the judge, and attaching to one evidentiary fact certain procedural consequences as to the duty of production of other evidence by the opponent. * * *

"Nevertheless, it must be kept in mind that the peculiar effect of a presumption 'of law' (that is, the real presumption) is merely to invoke a rule of law compelling the jury to reach the conclusion in the absence of evidence to the contrary from the opponent. If the opponent does offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule. * * * It is therefore a fallacy to attribute (as do some judges) an artificial probative force to a presumption, increasing for the jury the weight of the facts, even when the opponent has come forward with some evidence to the contrary."

In Jones' Commentaries on Evidence (2d Ed. 1926) it is said:

"Sec. 30. * * * We find that in some opinions presumptions are referred to as 'evidence.' The better reasoned authorities hold that a presumption is not evidence of a fact, but purely a conclusion, having no probative force, and designed only to sustain the burden of proof until evidence is introduced tending to overcome it.

" 'A presumption,' it is said, 'cannot in itself possess probative weight, but merely necessitates evidence to meet the prima facie case which it creates. When evidence is introduced rebutting the presumption, the presumption disappears, leaving in evidence the basic facts which are to be weighed.' (Citing Stumpf v. Montgomery, 101 Okl. 257, 226 P. 65 [32 A. L. R. 1490].)"

Quotation is here made by that author from a Rhode Island case, in which it is, in part, said:

"A presumption is not evidence, and it has no weight as evidence. It only makes a prima facie case for the party in whose favor it exists. A presumption merely points out the party who has the duty of going forward. The party against whom the presumption operates has the burden of producing satisfactory evidence to rebut the presumption. When this has been done the presumption becomes inoperative, and is laid aside, and the case proceeds as it would if no presumption had been invoked"—citing Colangelo v. Colangelo, 46 R. I. 138, 125 A. 285.

"Sec. 32. As shown in a preceding section, by the better-reasoned authorities, presumptions, including even the presumption of innocence, are not themselves evidence. [Citing sec. 30, supra.] Courts have frequently remarked that presumptions are only intended to take the place of facts, and cannot be relied upon where the facts are shown; or that no presumption can stand in the face of facts. According to such authorities a presumption is an artificial thing, a mere house of cards, which one moment stands with sufficient force to determine an issue, but at the next, by reason of the slightest rebutting evidence, topples utterly out of consideration of the trier of facts. * * * [Citing cases, including Canty v. Halpin, 294 Mo. 96, 242 S. W. 94, 97, in which it is said that "Presumptions are bats of the law, flitting in the twilight, but disappearing in the sunlight of actual facts."]"

In the article on "Presumptions" in 9 Encyc. of Evidence, at page 885, it is said:

"There is some confusion in the cases upon the question whether a presumption is evidence and has probative force. Since the function of a presumption logically considered is merely to impose the burden of going forward with the evidence upon the party against whom it operates, when contrary evidence is adduced the presumption disappears, although the facts upon which it rested still remain as evidence in the case. A presumption is therefore not evidence, nor is a so-called presumption of fact or mere inference of fact; it is merely the result of evidence.

"In some cases, however, it has been held that a legal presumption is evidence and has probative force as such even though its arbitrary legal character may have been destroyed by contrary evidence. These cases have been most frequently concerned with the presumption of innocence and instructions as to its force and effect. And some courts, while not regarding a presumption as evidence, nevertheless hold that it has a certain amount of probative force and is to be considered along with the evidence and that it is not overcome by any competent evidence to the contrary, however slight"—citing cases.

In a marginal note to the above it is said:

"The better opinion seems to be that no disputable presumption of law is to be regarded as testimony which must necessarily be submitted to a jury, but its office is merely to determine upon which party the onus probandi is laid. Spaulding v. Chicago & N. W. Ry. Co., 33 Wis. 582, in which the presumption of the improper construction or management of a locomotive arising from proof that it set a fire was held to be overcome as a matter of law by uncontradicted evidence showing its proper construction and management. It was contended that this presumption had the force and effect of testimony, and the question, therefore, whether contrary evidence was sufficient to overcome it was one for the jury and not for the court. It was held, however, that presumptions of law are different in this respect from presumptions of fact. Their weight and effect and the amount and character of the proof necessary to overcome them being questions for the court"—citing cases.

"The general presumption that public officers have faithfully executed the duties with which they are charged 'is a mere arbitrary rule of law. It possesses no inherent probative force, and when met by opposing evidence is entirely destroyed.' Blaco v. State, 58 Neb. 557, 78 N. W. 1056; see, also, Sternberger v. McSween, 14 S. C. 35."

"A legal presumption is not evidence. It establishes a point when there is no testimony, and no inference of fact from the absence of testimony, and also when all the testimony is so balanced that the point is not decided by the testimony. State v. Pike, 49 N. H. 399, 443, 6 Am. Rep. 533."

In Hunter Glover Co. v. Harvey Steel Products Corp., 3 F.(2d) 634, 639, Judge Ross of the District Court for the Western District of Tennessee held that the presumption (involved herein) of the regularity of the performance of official duty disappears when proof to the contrary is offered by either party.

In view of a new trial, it may be said that there is no evidence of the concealment by appellant of the fact that proceedings had been instituted to revoke his permit. The policy was issued by the agent in conformity with a custom covering many years without any questions being asked of the appellant. There is no indication that appellant knew that the insurance company considered the pendency of said proceedings as in any way affecting the policy that was issued. With reference to failure of appellant to notify the insurance company that his permit had been revoked, this did not create any additional hazard, unless it should be assumed that the owner of the winery would be thereby tempted to destroy it by fire. The appellant, if an honest man, would have no occasion to give notice that he might possibly be tempted to destroy his building by fire; and, if a dishonest one, he certainly could not be expected to do so.

Judgment reversed.

SAWTELLE, Circuit Judge, concurs.